**Linda K. LOVELL, Plaintiff,**

v.

**BBNT SOLUTIONS, LLC,
et al., Defendants.**

**No. CIV.A. 03–271–A.**

United States District Court,
E.D. Virginia.
Alexandria Division.

Feb. 6, 2004.

Ellen Kyriacou Renaud, Swick & Shapiro, P.C., Washington, DC, for Plaintiffs/Movants.

Christopher Michael, Jonathan Paul Harmon, McGuireWoods LLP, Richmond, Va, for Defendants/Respondents.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this Title VII[1] and Equal Pay Act[2] ("EPA") sex discrimination action, plaintiff moves for reconsideration of an order granting, *nisi remittitur*, defendants' mo-tion for a new trial with respect to the jury's award of back pay damages pursuant to Rule 60(b), Fed.R.Civ.P.

## I.

Plaintiff, Linda Lovell, brought this action alleging, *inter alia*, that defendants paid a male, Charles McNamara, a higher salary for work substantially similar in nature to that performed by plaintiff, in violation of both Title VII and the EPA. The trial evidence on this claim may be succinctly summarized.[3] During the relevant time period, plaintiff, holder of an undergraduate degree in textile chemistry and a master's in business administration worked for defendants on a reduced-hour schedule of thirty hours per week. The record reflects that she was effective and successful in her job as a Senior Staff Consultant—Technology in the Materials subgroup. The record also reflects that up until mid-2002 she was paid at a higher rate than other male colleagues in the subgroup, with the exception of Paul Gauthier, the Technical Lead of the subgroup.[4] Then, in June 2002, defendants hired McNamara from a competitor to work full-time—forty hours per week—at a starting salary of $105,000. Thereafter, in April 2003, McNamara's salary was increased to $107,500.

At trial, defendants presented evidence that they paid McNamara a higher salary to lure him from a competitor corporation where he was receiving a salary of $104,000. Plaintiff presented no evidence

---

**1.** 42 U.S.C. § 2000e *et seq.*

**2.** 29 U.S.C. § 206(d).

**3.** For a detailed exposition of the facts in this case, see *Lovell v. BBNT Solutions, LLC*, 295 F.Supp.2d 611 (E.D.Va.2003).

**4.** In particular, Steve Lutgen, who held the same job title as plaintiff—"Senior Staff Consultant—Technology"—earned a salary based on a forty-hour work week of $80,600, $84,600, $88,100, and $91,600 respectively for performance years 1999, 2000, 2001, and 2002. Based on the rate of pay for her reduced hour schedule, plaintiff's annualized salary for a forty hour work week for performance years 1999, 2000, 2001, and 2002 would have been $93,333, $98,000, $99,333, and $103,333, respectively.

to refute defendants' evidence concerning McNamara's former salary at the competitor or defendants' characterization of the salary negotiations. Instead, plaintiff presented evidence that defendants' policy was to raise the salaries of those already employed in the event the market compelled defendants to pay a new hire more to lure him from a competitor. In other words, plaintiff argued, and the evidence showed, that defendants' policy was to treat such market conditions as a rising tide that would raise all boats. Put another way, McNamara's rising tide should have raised plaintiff's boat. This failed to occur; plaintiff's boat was not raised; she received no raise as a result of the higher salary defendants paid McNamara to lure him aboard. In the end, therefore, the jury found in favor of plaintiff on her pay discrimination claim and awarded her a combined total of $175,000 in back pay, $75,000 under Title VII and $100,000 under the EPA. Thereafter, defendants challenged the jury's verdict on various grounds,[5] including a request for a new trial pursuant to Rule 59, Fed.R.Civ.P., on the ground that the back pay award was excessive. By order dated December 11, 2003, defendants' motion for a new trial pursuant to Rule 59(a), Fed.R.Civ.P., with respect to back pay damages was granted, *nisi remittitur*. As a result, the ·jury's back pay damage award was reduced to $3,125, plus interest, in the event plaintiff accepted *remittitur* in lieu of a new trial on the issue. This sum reflects the one-year salary differential between plaintiff and McNamara, once plaintiff's reduced

hour schedule is taken into account. It excludes any payments for the period prior to McNamara's hiring. Plaintiff now challenges this reduction pursuant to Rule 60(b)(6), Fed.R.Civ.P., as resulting in an amount of back pay below that required by both Title VII and the EPA's statutory back pay recovery periods. She contends she is instead entitled to a total of $11,718.90 in back pay.

## II.

Rule 60(b) strikes a "balance between the conflicting principles that litigation must be brought to an end and that justice should be done"[6] by empowering courts to relieve parties from a final judgment for a variety of reasons, including any "reason justifying relief from the operation of the judgment." Rule 60(b)(6), Fed.R.Civ.P. In essence, this subsection of the Rule provides courts "with a grand reservoir of equitable power to do justice in a particular case and vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice where relief might not be available under any other clause in 60(b)" *Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861, 872 (4th Cir.1999).

The need to correct clear error or prevent manifest injustice is an appropriate ground for a motion to reconsider. *See Salmeron v. Highlands Ford Sales, Inc.*, 248 F.Supp.2d 1035, 1037 (D.N.M. 2003). Thus, a motion to reconsider under Rule 60(b) is appropriate where a court "has misinterpreted the facts, a party's

---

**5.** Defendants argued (i) that plaintiff failed to present a *prima facie* case under both Title VII and the EPA on her disparate pay claim and her raise claim; (ii) that there was insufficient evidence in the record to support the award of compensatory damages; and (iii) that the jury's award of economic damages under Title VII and the EPA was excessive.

For a complete analysis and resolution of these arguments, see *Lovell v. BBNT Solutions, LLC,* 295 F.Supp.2d 611 (E.D.Va.2003).

**6.** 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2851 (1995); *accord Paddington Partners v. Bouchard,* 34 F.3d 1132, 1144 (2d Cir.1994).

position, or the controlling law." *Id.* In this regard, plaintiff appears to argue that the result reached in this case with respect to the back pay *remittitur* is manifestly unjust because it misinterprets the controlling law and, in addition, fails to give plaintiff the benefit of facts and inferences warranted by the jury's verdict. Specifically, plaintiff contends that even though McNamara is the only proper comparator to plaintiff, her back pay award is not limited in its retroactive calculation to the date of his hire.

## III.

Analysis of plaintiff's contention properly begins with the recognition that the EPA and Title VII provide for different back pay award periods. Under the EPA, back pay recovery is limited to the two-year period before the filing of the complaint, or to three years in the event of a willful violation of the Act. *See* 29 U.S.C. § 255(a). Plaintiff's complaint in this action was filed on March 3, 2003. The jury found that defendants' violation of the EPA was not willful. Therefore, plaintiff's back pay recovery period under the EPA is the period from March 3, 2001 until March 3, 2003. By contrast, the Title VII back pay period is longer; under Title VII, back pay liability can accrue from a date up to two years prior to the filing of a charge with the Equal Employment Opportunity Commission ("EEOC"). *See* 42 U.S.C. § 2000e–5(g)(1). Plaintiff filed her charge with the EEOC on April 18, 2002. Therefore, plaintiff's back pay recovery period under Title VII extends back to April 18, 2000.

■ It is also important to recognize at the outset of the analysis that plaintiff is correct in contending that in general a plaintiff may compare herself to a male successor or predecessor in order to prove an EPA or Title VII violation. *See Brink-*

*ley–Obu v. Hughes Training, Inc.,* 36 F.3d 336, 343 (4th Cir.1994) ("A plaintiff may make her *prima facie* case by comparing her salary to that of her predecessor or successor."). Therefore, a plaintiff is not limited to comparing herself to a contemporaneous employee to prove her claim of pay discrimination. Indeed, for this reason, plaintiff claims that she is entitled to recover the back pay disparity between McNamara's salary and her own for the entire two-year statutory period under the EPA and from April 18, 2000 to the present under Title VII, despite the fact that McNamara, plaintiff's sole viable comparator was not hired until June 2002. Specifically, plaintiff contends that had McNamara been her successor, she would be entitled to recover back pay for the entire EPA and Title VII periods, even though McNamara and plaintiff were never contemporaneous employees in this hypothetical scenario. *See Brinkley–Obu,* 36 F.3d at 343; *accord* 29 C.F.R. § 1620.13(b)(4) ("If a person of one sex succeeds a person of the opposite sex on a job at a higher rate of pay than the predecessor, and there is no reason for the higher rate other than difference in gender a violation as to the predecessor is established and that person is entitled to recover the difference between his or her pay and the higher rate paid the successor employee."). Thus, plaintiff reasons that the mere fact that she worked at the same time as McNamara during part of her employ with defendants should not alter the statutory period for which she is entitled to recover back pay. If this were not the case, plaintiff argues, she would be perversely penalized for her decision to stay at her job after McNamara was hired, rather than quit.

■ Yet, in the end, plaintiff's contention fails because it is not supported by the record. In this respect, the record

indicates that before McNamara's hire, plaintiff was paid more on an annualized basis than any of the other male employees in her subgroup, with the exception of Paul Gauthier, the Technical Lead of the Materials group, who, as a matter of law, was not an appropriate comparator.[7] Defendants argued that they paid McNamara more to lure him from a competitor where he was already receiving a higher salary than plaintiff. Plaintiff did not present any evidence to refute defendants' evidence regarding. McNamara's previous salary at the competitor corporation or the nature and tenor of the salary negotiations between McNamara and defendants. Instead, plaintiff attacked defendants' proffered explanation with the deposition testimony of Jude Nitsche, a department manager at BBNT. His deposition testimony allowed a reasonable jury to infer that if market forces required defendants to pay more to lure someone from outside the company to accept a job offer, defendants would raise the salaries of those already working in the company to compensate. Yet, in the end, this internal rise in salaries did not occur; and the failure to raise plaintiff's salary after McNamara's hire is what resulted in defendants' violation of the Equal Pay Act and Title VII in this case. Put another way, plaintiff's injury occurred when McNamara joined defendants' employ for it was at this point that she began receiving lower compensation for equal work.

To be sure, plaintiff also presented evidence at trial regarding the failure of her male coworkers to provide her with billable work and the failure of defendants to provide her, as the only female, with a laptop computer for three years. Plaintiff also presented anecdotal evidence of being reprimanded or challenged in front of clients by Gauthier and of Gauthier's failure to take her ideas seriously. Yet, none of this evidence alone, or taken together, is evidence of pay discrimination. Instead, it is evidence that served to bolster the jury's conclusion that plaintiff's sex was the reason for the pay disparity when that disparity ultimately occurred between McNamara and plaintiff. As a result, the evidence in this case simply does not warrant an inference of *pay* discrimination prior to McNamara's hire, even if plaintiff established that she was treated discriminatorily by defendants before McNamara's hire. To conclude otherwise would be to give plaintiff the benefit of facts not proved and inferences not warranted from the jury's verdict. While the jury's verdict no doubt reflects a strong feeling that defendants did not treat plaintiff appropriately, there is nothing in the record that warrants an inference of *pay discrimination* prior to the failure of McNamara's tide to raise plaintiff's boat.

In contrast, oftentimes an inference of pay discrimination is drawn in successor cases not simply because the male successor receives a higher salary, but also because, before his hire, there are no men performing equal work.[8] In plaintiff's case, however, there were such men, like

---

**7.** It became evident at trial that Gauthier was not a suitable comparator, as his position entailed significant supervisory and other duties that were not part of. plaintiff's position. Therefore, at the close of all the evidence, defendants' renewed motion for judgment as a matter of law pursuant to Rule 50, Fed.R.Civ.P., was granted on this issue and plaintiff was thereafter limited to McNamara as the sole appropriate comparator.

**8.** *See, e.g., Gandy v. Sullivan County,* 819 F.Supp. 726, 727 (E.D.Tenn.1993) (noting that EEOC regulations governing successor/predecessor cases "deal with instances where there was no similarly situated employee of the opposite sex working at the time of the alleged violation").

Steve Lutgen, performing work similar to plaintiff. Plaintiff, however, was paid more than Lutgen on an annualized basis.[9] It is not the case, then, that plaintiff had no one to compare herself to before McNamara's hire. Rather, such a comparison would not prove beneficial to her because it would not support a claim of pay discrimination. Furthermore, the very theory plaintiff used to discredit defendants' proffered explanation for the pay disparity itself suggests that the date of McNamara's hire was the date of plaintiff's injury on her pay discrimination claim. *Cf. Hatton v. Hunt,* 780 F.Supp. 1157, 1167 (W.D.Tenn.1991) ("Under the circumstances of this case, plaintiffs are entitled to recover backpay from May 11, 1988, the date [the male comparator] was hired at a higher salary, through the present.").[10] Because plaintiff continued working at BBNT, this injury continued so long as plaintiff received a lower rate of pay for work equal to that of McNamara. It is clear, however, that there is no basis to believe that prior to McNamara's hire, defendants' were paying plaintiff a discriminatorily low salary on the basis of her sex.

Accordingly, plaintiff's motion for reconsideration of order granting *nisi remittitur* defendants' motion for a new trial with respect to the jury's award of back pay damages must be denied.

An appropriate order will issue.

---

9. This is not to suggest that plaintiff's higher pay at this time was not legally justified. Indeed, her considerable experience, education and success are potential legitimate nondiscriminatory reasons for her higher rate of pay.

10. *But see EEOC v. First Citizens Bank of Billings,* 758 F.2d 397, 402 (9th Cir.1985) ("The district court erred in limiting damages to the time after the men were hired."). *First Citizens,* however, is meaningfully distinguishable from the instant case; that case arose in a context where the district court's limitation of back pay recovery to the period after certain male comparators were hired would eliminate recovery altogether for some plaintiffs who left work before the male comparators were hired. *Id.* The Ninth Circuit panel understandably found such a result untenable because the Equal Pay Act "does not require that jobs being compared be performed simultaneously; it also encompasses situations where an employee of one sex is hired for a particular job to replace an employee of the opposite sex." *Id.* Here, by contrast, plaintiff does stand to recover by limiting back pay in this manner because this case involves a contemporaneous comparator. More importantly, in contrast to *First Citizens,* the facts of this case do not support the conclusion that defendants were engaging in pay discrimination against plaintiff before McNamara's hire. The intent of an award of back pay is to make a person whole, not to provide plaintiff with a windfall or to punish defendants for other inappropriate or discriminatory behavior. *See UTU Local No. 974 v. Norfolk & Western Railway,* 532 F.2d 336, 341 (4th Cir.1975) ("The objective of back pay is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.' ").